May it please the Court. My name is Philip Chabot. On behalf of the law firm of McCarthy, Sweeney & Harkaway, I represent the petitioner in this action, North Star Steel Co. The panel has been at this for an hour and a half now. It's getting toward lunch. And I hope that you'll allow me, therefore, to share with you my unbridled enthusiasm in being able to bring to you a Federal Power Act case and hope that you share in that. Under the Federal Power Act… We live for this. Pardon me? We live for this. I'm certain that you do. Under the Federal Power Act, it clearly provides that FERC has exclusive jurisdiction over rates charged by jurisdictional entities, that is, non-governmental entities that are engaged in the wholesale sale of electricity in interstate commerce. And nothing else. Pardon? And nothing else, it says. That's correct. It does indeed. It does not have jurisdiction over retail sales. Section 206, however, says that if upon complaint… A new client is a retail customer. The client is a retail customer. But the complaint is not about a retail rate. It is exclusively about wholesale rates charged by jurisdictional entities who are engaged in the sale of electricity in interstate commerce. It is the wholesale rate that is at issue here. And 206 says… We did the radio brief, so we do understand what your argument is. What I didn't understand is what is your response to the counterargument that, you know, this is a good argument, but not one that the agency need to accept, and that their interpretation of the statute is plausible and therefore binding on us. What is your answer to that? Well, the answer to that, Your Honor, is that the commission has created an exception that is not in the statute. It has transformed its lack of jurisdiction under Section 824B to limit its authority to give refunds from jurisdictional entities with respect to jurisdictional rates involved in jurisdictional transactions. And that limitation is nowhere contained in the Act. It is an inference that FERC, an assertion that FERC has made. It has… You know, maybe you didn't hear my question. And that is, you understand about deference to agency interpretation of their own statute, right? I certainly do, Your Honor. I know about that. And the question is why, you know, yours is a plausible argument, perhaps. Why isn't it a plausible argument as well? Because deference is due in cases of statutory interpretation if the statute is ambiguous. The statute is not ambiguous. FERC's authority to give refunds is not ambiguous. It has that authority if what is involved… Can't give you a refund. Pardon me? Can't give your client a refund. It doesn't – the statute doesn't say that. The statute says upon complaint by any person with respect to a jurisdictional rate, it can give a refund. It says shall be made with interest to those persons who paid the rate or charges which are the subject of the proceeding. And your client didn't pay those rates or charges. Oh, absolutely we did, Your Honor. You paid at retail. You're challenging the wholesale rates. Exactly. We are challenging the wholesale rates, and that's the question. You paid the rate or charge which is being – which is the subject of the proceeding. Proceeding? You paid a different – you paid a rate based on that, but not that rate. Because it was passed through to you, and then your rate was based on the wholesale rate. The – that's correct. That's exactly correct. The – the identifiable wholesale rate was a distinct identifiable component of the retail rate that we charged. But it wasn't the rate that you charged. It was a component of the rate that you charged. That's correct, but it's the – So are you better off arguing that the wholesale rate should be refunded to AEDPCO and they'll pass it through to you, Your Honor? Well, when FERP made clear that the error that we apparently – or they think that we made was to ask for that refund to come directly to us, we said fine. If that's the case, the – you know, go ahead and provide that the refund should go to AEDPCO. We'll take – we'll take that up with AEDPCO if you do that, but FERP declined to do that. There's – what's – what's notable, FERP would have a – FERP would have a concern, and there is – if this were a traditional retail rate in which the wholesale rate was bundled and merged and taken into account in the rate of that was subject to the jurisdiction of the state. That's a legitimate concern, but that's not the case here. I don't really see a difference, because it seems to me as a policy matter that if they order a refund for you, any retailer can come in and say, well, look, you know, the retail price I paid was partly determined by the wholesale rate. They always are. And you can always make some effort segregating. Well, in fact – It happens to be a little clearer here than it might be in some other case, but – It was extremely clear here, and – All right, but you see the point. It could be the same. People could segregate the wholesale price from other factors. Well, typically you can't in a bundled rate, and that's the point I'm trying to make here, Your Honor. And FERP even allowed it to happen. There are two exceptions to the exception that we think they've created. First is, if we were to have been an intervener, a retail customer intervening in a proceeding such as Blue Heron did, in which case we never had to say that we wanted as a result refunds to be paid to us, we could have at the end gotten refunds, because that's exactly what happened there. Blue Heron intervened, and refunds were provided directly to Blue Heron. If we had been ambiguous, we hadn't said we want refunds paid directly to us, which is the case of Kroger. Kroger files a complaint. They have a contract similar to ours. But what do they say? They say we'd like relief. We want a refund effective date and such other relief to Kroger as may be appropriate. FERP says, well, that's ambiguous. They didn't really come right out and say we want you to give the check to us. And FERP never ordered that in the Kroger case, either. That case was settled, was resolved before the remedy. But they provided the adjudicative. They provided an adjudicative hearing, which required a determination that the complaint was jurisdictional, that it raised jurisdictional issues. If we were to the counter of this, and the reason that FERP is the only entity from which Northstar can obtain relief, is that if we were to go to the State Corporation Commission and say, look, our retail rate is bollocked up because the person who sold energy to APCO abused market power, engaged in illegal transactions, and so on and so forth, APCO would say, so what? The only thing that they're concerned about from the retail perspective is the 14% adder that APCO got and the 1% adder that MEC got. The response of the Arizona Corporation Commission would be, if you've got a complaint with respect to the wholesale rates that APCO paid, go to FERP. Statute says you can upon complaint of any person. Kennedy. Well, now, you intervened in the California proceeding. Yes, we did. And that's where the ruling was made that left you out. Did you appeal that? There hasn't been a final decision in the law. Why don't you appeal it? What's happened in the California proceeding is that in a very long process, FERP made clear that the only thing that it was going to consider in the California proceeding was transactions that took place in the California ISO and PX market. There was no reason to appeal that because they simply said, you're not in this case. How did you get in it to begin with? We got in it to begin with because that was not clear at the beginning. When FERP first established the San Diego case, the California refund case, along the way it expanded the case to include the entire Western interchange. All right. So you're in at that point. At that point, we're in. Later, they then say, well, we're going to spin some things out here. We're going to devote the California refund proceeding to California ISO PX transactions. We're going to create a separate proceeding for the Pacific Northwest. And they leave you out. It was silent with respect to us. We were left out. Why don't you appeal that? Because we thought that the appropriate way to proceed was to say, fine, if we're not in this process, then let's file a separate complaint. And part of the reason that we did that is because the Pacific Northwest interveners were told, you have no case because you didn't file your own complaint. And we didn't want to run into that problem. And so we filed our own complaint. We went one step further than Kroger. We said, in view of our contract in which you can specifically identify and trace the wholesale rate, we're asking that that check go to us. FERC comes back and says, aha, you're a retail customer asking for a retail refund. Therefore, 824B trumps the authority we have in 824E. And we no longer have jurisdiction to tell a jurisdictional entity to pay a refund.  And FERC's interpretation of the Act is not supported by any. Let me ask you this. I think this is a question Judge Noonan was asking. I don't think I heard a satisfactory answer. What ‑‑ I think it's the same question. If you are right, why doesn't every electricity customer in San Francisco, let's say, or every household in California have a chance to go and bring a FERC proceeding, saying somewhere upstream one of the people that sold electricity to the utility that, I don't know who's here, but in southern California, Edison, for example, where I live, why couldn't everybody in California bring that kind of proceeding? Or would they? First, they could. Under the statute, any person can bring the complaint. It changes the nature of FERC proceedings considerably for every household in the country. I mean, they're in the business of adjudicating wholesale rates and the like, and it says we leave it to the states, the retail stuff. There's a very practical reason why they won't, and that is ‑‑ Who's they? Why such retail customers will not. And that is because unless they have a contract such as we had or Kroger had, they will never be able to draw the specific line of the rate between the wholesale  I won't say you, but if I remember correctly, looking at my utility bill, there's all sorts of stuff on there about where the electricity comes from and what the charges are for, and they have proceedings every so often. Let's say you come and, I mean, the state regulatory agency, I forget who it is, sends us a little notice saying we're going to have a hearing about change utility rates, and these things can be traced. It's not so difficult. Electricity is just like any other commodity, and if you wanted to bring a lawsuit and take discovery, I bet you you could find wherever a single electron came from that was used in any particular household. Again, Your Honor, I believe that under the statute, any customer would have that right. FERC then has the discretion to deny the relief. We believe that the reason they denied the relief here is not because it was an arbitrary and capricious basis. The basis is the interpretation of the statute. How would they deny relief? If they can't deny you relief, how can they deny relief to a Joe customer who has a household in, you know, let's say Beverly Hills, California, that says, you know, I was charged too much because PG&E or Southern California or whoever it is down there bought electricity, and everybody buys electricity from Arizona eventually, right? That's another point. No, I mean, it's just the way it is. If you're in Southern California, you know, we depend on Arizona for electricity. So why couldn't we all sort of bring that kind of lawsuit? Because when crafting a remedy, FERC does have the discretion. And the problem here is, and it could reasonably exercise the discretion, we think, in that case to say, no, this suit should be brought either by, this complaint should be brought by an investor, excuse me, by the retail provider, or we'll hear your complaint, but we'll have the check cut to the retail provider. You take it up with your state corporation commission. And, again, we're perfectly willing to do that. They say the first thing in your case? Pardon me? Didn't they say the first thing in your case? I said they can say two things. They can dismiss on two bases. I thought they dismissed it on your case on the first basis. I'm sorry. I forgot the order in which I said it. If you refresh my recollection. I think what you said is we can dismiss it because you're not the right person to bring the complaint. And that's what they said to you. You're not the right person to bring the complaint. If they can do it to the customer in San Francisco, Beverly Hills, or, you know, any household in California, why can't they do it to your client? Now, again, I believe that if it flat out did that under these circumstances, where you can trace the wholesale rate, that that is an abuse of discretion. And, again, particularly given the fact that they have allowed an adjudicative proceeding to proceed with respect to an identically situated customer whose only thing they did different than us was not say right out front, we want the check. But I think if you read through the lines, that's exactly what they were requesting, and that's ultimately exactly what they said. Time is up. We'll hear from the other side. Thank God for flexible mics. Some courts don't like you to touch the mic, so I always want to see what others do. Good morning. I'm Carol Banta for the commission. With me at council table is Mark Nagel for the interveners and also Jeffrey Jakubiak. I will try to reserve three minutes to cede to the interveners to present their argument. To pick up on the obvious point, the court is right to be concerned that this could open the door for other retail customers to do the same thing. There's no basis in what we have before us to say that these kinds of contracts are uncommon. Maybe every house doesn't have them, but maybe among industrial users or industrial customers, that's certainly a concern. So the commission focused not on the identity of the customer. Even households, if you tried hard enough, you could trace. Oh, sure. I don't mean to discount that at all. I mean, it's just a question of reverse engineering the process of how electricity gets routed to your house. Sure. I think we understand your concern, but the other concern one has is how does this company get any redress for manipulation of the wholesale market? Sure. What should they have done to get it? Well, the commission did address this. The commission in the rehearing order. What's that? In the rehearing order, the commission said, okay, we found that we don't have jurisdiction to give refunds that would be retail refunds. But if, after North Star suggested in a footnote on rehearing, well, what if you construed our complaint to give the refunds to Arizona Electric? Right. And then that requires a second step of however they get their pass-through refund from Arizona Electric. Right. The commission on rehearing said, well, this was raised in passing, but we'll address it. And the commission said we would not exercise our discretion to fashion a remedy because North Star and Arizona Electric are both parties to the California refund procedure. Okay. So is there a remedy for the mayor in the California proceeding? I think the commission said if there's going to be a remedy, it's appropriate to look for it there. Is there one? Well, the commission thought so. And to the extent that North Star thinks that there isn't, it didn't challenge that alternative holding to give the commission a chance to say, oh, well, maybe we were wrong. I mean, I don't get it. You're representing the commission. Yes. The commission says, well, you can look for it here. Is there a remedy there? Well, there could have been. I guess they missed their chance. Is that your position? I think so. I mean, I don't know whether they could have done it. I don't know whether they can do it now. As far as I can see, they lose wherever they go. And are you saying, oh, no, they could have won in the California proceeding? Well, they are in the California refund proceeding. Can they appeal? Then they're excluded from. Well, I'm not sure that the commission in the rehearing order was given that there's no mention, as I recall, in the request for a hearing of North Star's focus on the Desert Southwest as opposed to the California markets. There had been some references early in the background section of the complaint that North Star was concerned about the Desert Southwest. But on rehearing, it wasn't flagged for the commission. So to the extent that North Star thinks that the commission's alternative holding on rehearing, that we would have jurisdiction to give refunds to Arizona Electric. But we think the appropriate proceeding in which to do that is the existing California refund proceeding. Okay. Your answer is, I mean, as I understand, your answer is they're not shut out. They are in the other proceeding. And FERC will give them a hearing there. Is that right? Oh, I don't know that. Why not? You're representing the commission. It's a five-member body that wasn't asked that question. And I think that's a good argument, because, again, the first time this came up was on rehearing. I mean, here you're talking to a court that is concerned about them not having a remedy. I ask you, do they have a remedy? And you answer, well, maybe. Because I'm not able to commit the commission to grant a hearing. But what the commission said in its rehearing order was if you're going to get this kind of relief, the appropriate place to seek it is in the California refund proceeding. To the extent that Northstar found that inadequate, you don't understand us. We've already lost out in the California refund proceeding. They never came back to the commission and said your alternative holding is mistaken. So the commission didn't get a chance to answer your question. And I can do my best, but I'm not able to. Right. I mean, that was a they said that, the commission said that on rehearing, didn't they? They did. But it was a new holding, because it wasn't an alternative rationale for why we don't have jurisdiction to give retail refunds. It was addressing a question. And they could have filed their hearing over hearing. It would be, because it wasn't an alternative rationale. I think so, yes. Procedurally, they could have. We believe so. So should we remand to the commission for consideration of whether they're limited to the California refund proceeding or whether there is alternative relief through a refund to EPCO? No. There's ample precedent that under Section 313, if you don't seek rehearing of an objection, you don't get to raise it on appeal. And I believe we cited the Excel case, if I'm recalling correctly. The D.C. Circuit referred to an issue like this as twice waived, not raised on rehearing before the commission, and not raised in the opening brief on appeal. But I'm not clear. I understand all your arguments. You kind of set up a straw man here. You say, you know, we're focused on the California refund proceeding. That's where they should have sought relief. But by the way, they couldn't get relief from that anyway. We don't know that. Well, but you make those arguments that it's a different time period and they're not really part of that proceeding and that they're not covered by the ---- I don't believe we said we weren't part of the proceeding. The commission anticipated the one objection, again, because this alternative holding that's on page 138 of the excerpt of record was first addressed by the commission on rehearing because it was first raised in a footnote in the rehearing request. The commission tried to anticipate what the objection might be. They didn't think of the Desert Southwest objection. They thought of the temporal scope. And the fact is that the temporal scope of the California refund proceeding is still in flux. In fact, it's not even before the commission. It's still before the court. Who is a party to the California refund? Is Mojave? Dozens, hundreds. Arizona Electric and North Star are both parties in the California refund proceeding. And Mojave? I'm not sure. They weren't really brought into the mix here. So if they, for some reason, don't get relief in the California proceedings, but Arizona does, as retailers, they can go under state law. Whatever rights they have under their state jurisdictional contract or before the state regulator. So if Arizona gets relief in the California proceeding, if Arizona Electric gets relief, that would domino down. That would be entirely up to Arizona, either the courts or the Arizona Corporation Commission. That would be on the retail end. It would probably be contractual issues. But that would be the relief that they're seeking here, the alternative relief, which is to say, if you don't want to pay us, pay Arizona Electric. Right. That's right. But is there something that precludes the commission from looking at the refund request that goes to Arizona, apart from the California refund proceeding? I mean, what is there that says this is the only way you can do that? It doesn't. And the commission said, we note that the commission's fashioning of remedies is discretionary. Northstar has failed to persuade us to exercise our discretion to fashion a remedy in this proceeding. The California refund proceeding is the appropriate forum, and that's why we cited cases in our brief. And this, again, goes to the concern of maybe other retail customers wanting to bring similar complaints. Even if there's not a jurisdictional issue, the commission has the ability to channel its cases into proceedings as it deems appropriate. And the California refund proceeding is enormous. It has I don't know how many parties. There are something like 200 appeals before this Court, so I can only imagine how many parties. And it has chosen to channel related issues into that. But under the commission's July 25th order, there are serious problems for Northstar and EPCO to participate in the California refund proceeding on this kind of issue, aren't there? I mean, they have they didn't buy at auction. They bought under a bilateral contract. So that's not even the subject of the California refund proceeding. I think that's correct. But to the extent they think it should have been, other parties who objected to similar arrangements not being addressed in the California refund proceeding objected there and brought appeals from that proceeding. They didn't just bring a separate complaint. And so the commission, again, this footnote in the hearing order was not a jurisdictional holding. It was, okay, fine, if we had jurisdiction, if we were talking about refunds to Arizona Electric, here's how we exercise our discretion. And we believe there's an appropriate form already. You're already parties there. We're trying to impose some order on all of this by keeping all of these issues in that proceeding. And, again, the discussion about the temporal scope was the commission anticipating the objection they thought Northstar might make, not the Desert Southwest, because that hadn't been flagged, I guess, but the temporal scope. And, again, this Court has, I believe, vacated the commission's decision on the temporal scope, said commission could go back farther. And as far as I know, that's actually still pending on rehearing in front of this Court, which is why the commission has not yet revisited that issue. Do you want to be yielded, Mr. Guattaro? I do, if the Court has no further questions for me. Thank you. May it please the Court. Mark Nagel on behalf of Intervenors. And we thank the Court for the opportunity. Why isn't Arizona Electric happy to have another champion? I beg your pardon, Your Honor. Why isn't Arizona Electric happy to have another champion? I don't know that they're not, Your Honor. I do think that — I'm sorry. Who do you represent? Intervenors Arizona Public Service. Oh, public service. I see. Which is the state regulatory body. No, Your Honor. It is a supplier. Supplier. Okay. The intervenors were wholesale suppliers. Okay. I get these names confused. I understand, Your Honor. And mindful of the colloquy that the Court has already had with counsel for the commission and counsel for the petitioners, the intervenors would just focus very briefly on one or two points to clarify what is it that this petitioner, North Star Steel, could have done but did not, so that the Court can be satisfied that the manner in which the commission has read and applied the Federal Power Act not only is consistent with the language of the Act but does no violence to North Star's opportunity, had it properly chosen to follow the path to pursue this remedy that was available to it. There has been substantial discussion with counsel already about the scope of some of the administrative proceedings at the commission. We would respectfully note, in addition to the proceeding designated EL00-95, there is an additional proceeding designated EL01-68, very broad in scope, to which Arizona Electric Power Co-op is a party and in which Arizona Electric Power Co-op's entitlement, though none to refunds, can and will be addressed. For this petitioner, North Star Steel, the course that it should have followed, but from everything discernible in this record it has not done and certainly did not present to the commission in the proceedings below any evidence that it had, was having itself intervened in the administrative proceedings previously discussed and knowledgeable that its seller, Arizona Electric Power Co-op, was a party to those administrative proceedings. North Star Steel could have, but so far as we know did not, have proceeded either in Arizona State Court or before the Arizona Corporation Commission with a request for declaratory relief to the effect that any refunds that were found to be due and owing to this petitioner's seller, that is the Arizona Electric Power Co-op, would be then payable over under North Star's contract with the co-op to North Star. That is a question of State law. That is a proceeding they could have followed. And it's a remedial structure that remains true to the Federal State Division of Power that's reflected in the claim. Is it too late for them to do that now? I do not know, Your Honor. I do not know the relevant statute of limitations that would bind North Star for those claims. If it is too late, however, it is a matter of their own doing, because at least as long ago, Your Honor, as the year 2001, North Star knew that in at least some respects the course of the proceedings that we previously discussed in EL0095 and EL01-68 were moving apace. It sought rehearing on July 12th ‑‑ I'm sorry, July 19th, 2001, of certain orders entered by the Commission in those administrative dockets in response to a question previously tendered by Judge Noonan, at least from our review of the record, no resolutions adverse to North Star in these administrative proceedings were ever the subject of efforts to seek judicial review by North Star. And so ultimately, Chief Judge Kuczynski, our question is if it is too late, that is entirely a matter of North Star's own doing. It's worth remembering, and I would conclude with this point, unless the panel has additional questions from interveners, it is worth remembering that this contract that North Star negotiated and entered into with its seller, Arizona Electric Power Co-op, allows North Star itself to select the wholesale seller for all supplies, I believe, except the one-hour spot market. And therefore, this is not the position of a retail purchaser who could legitimately claim to have been uninformed about the state of affairs in these markets as the situation unfolded in 2000 and 2001. Thank you. Thank you very much. May I just very quickly, Your Honor? The counsel for the Respondent is quite correct that ‑‑ You are into negative time. We'll give you a minute, Roberto. Thank you, Your Honor. The question that these transactions were focused on transactions in the desert southwest outside of the Kaizo PX transactions was stated right up front in paragraph 18 of our complaint. There are two CD ROMs of data which refer to transactions at Palos Verdes and other points outside of California. That evidence is clearly in the record. And when FERC said, take this through California, the California refund proceeding, it says, in fact, the California refund proceeding is the appropriate form to determine refunds for transactions in the California ISO and PX markets. It does not say for the desert southwest markets. So it's not just a question of FERC deciding what playing field that this fight is going to be fought out on. It's basically saying we're not going to allow you to pursue your own complaint, and P.S., simply because we're considering refunds to APCO in California. And, in fact, APCO is not getting refunds in California. APCO was a seller in California. The California refund proceeding is giving refunds to Californians based upon sales into the California ISO PX. We are excluded from any relief in that proceeding. And I'm sorry, where is North Star? North Star is in Arizona. Actually, it's nowhere now. It's out of business because of what happened during the Western energy crisis. But it was located in Arizona. The transactions at issue were made outside of California. They were made throughout the WECC outside of California because California didn't have any power to sell. Power sales were being made into California. And contrary to counsel's assumption. You didn't raise this to the board, right? Pardon me? You didn't raise this to the board. You didn't file another petition for it. Well, no, and there's a reason for that, because it didn't change the result. The result was our complaint was dismissed. It is not a separate finding. We think it's a separate rationale. And the case law is quite clear that it is inappropriate to file a motion for rehearing unless the result is different than the previous motion. Otherwise, you just keep getting motions for rehearing, motions for rehearing, motions for rehearing. The sequence was we said, wait a minute, FERC. We think you've misinterpreted the Federal Power Act because there's no limitation in 824 D or E to limit to whom refunds go. They came back and said, well, you know, we think there is. You're a retail customer. They simply reiterated that. And then said, you know. So you want a chance to go back and make this argument to the commission? I think a remand would be appropriate for a number of reasons. No, no. I understand. You want to win. You would rather we enter judgment in your favor. But just listen to my question and answer my question. You asked, do you want a remand to make this specific argument to the commission, the one that you did not raise in the second petition for a hearing because you explained to us you thought it was inappropriate? We believe that the case can be decided on other grounds. However, if the question turns to you. It's wholly irrelevant to what I asked. And every word you say that doesn't answer my question, I'm going to help you. So do you understand my question? If the question turns on that issue, then yes, we want a remand for that purpose. Thank you. The case is argued. It's not submitted. We are. That was the last case on the calendar, wasn't it? Long enough. No. We are adjourned.
judges: Kozinski, Noonan, Edmunds